**O**

# United States District Court
# Central District of California

| | |
|---|---|
| LAGREE FITNESS, INC. et al., | Case № 2:25-cv-10834-ODW (MBKx) |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [23]** |
| STUDIO PHYSIQUE, LLC et al., | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiffs Lagree Fitness, Inc. and Lagree Technologies, Inc. (together, "Lagree") bring this trademark infringement action against Defendant Studio Physique, LLC. (First Am. Compl. ("FAC"), Dkt. No. 17.)  Lagree now moves for a preliminary injunction, asking the Court to enjoin Studio Physique's use of Lagree's trademarks after Lagree purportedly terminated a licensing agreement between it and Studio Physique (the "Licensing Agreement").  (Mot. Prelim. Inj. ("Mot." or "Motion"), Dkt. No. 23.)  For the reasons discussed below, the Court **VACATES** the April 27, 2026 hearing on this matter and **DENIES** the preliminary injunction.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15; *S.F.-Oakland Newspaper Guild v. Kennedy ex rel. NLRB*, 412 F.2d 541, 546 (9th Cir. 1969).

## II.    BACKGROUND

### A.    Lagree Fitness

Lagree is a fitness company, founded in 2001 by its current CEO, Sebastien Lagree.  (Decl. Sebastien Lagree ISO Mot. ("Lagree Decl.") ¶¶ 1, 3–4, Dkt. No. 23-1.) Lagree developed an extremely popular, high intensity, low impact workout, now called the Lagree Method.  (*Id.* ¶ 3.)  Lagree also invented specialized equipment to use with the Lagree Method.  (*Id.* ¶ 4.)  Specifically, Lagree invented the Proformer, which is a refined version of a Pilates "reformer" but specifically engineered for the Lagree Method.  (*Id.*)  Lagree later refined the Proformer and invented the Megaformer to improve performance and comfort.  (*Id.* ¶ 5.)

Since its founding, Lagree has registered several trademarks associated with the Megaformer and the Lagree Method.  (Decl. Meredith L. Williams ISO Mot. Exs. I–T ("Marks"), Dkt. Nos. 23-10 to 23-21.)  Lagree's trademarks include MEGAFORMER, LAGREE METHOD,[2] and LAGREE STUDIO (collectively, the "Marks").  (*See* Marks.)

### B.    Licensing Agreement

Founded in 2015, Studio Physique is a Florida-based and Lagree-branded fitness studio owned by Christine Field.  (Decl. Christine L. Field ISO Opp'n ("Field Decl.") ¶¶ 3–4, 6–8, Dkt. No. 27-2.)[3]  On February 10, 2015, Studio Physique entered into the Licensing Agreement with Lagree.  (Lagree Decl. Ex. A ("Licensing Agreement"), Dkt. No. 23-2.)  The Licensing Agreement affords Studio Physique the right to use the Marks and the Lagree Method and to buy Lagree's Megaformers (the "License").  (*See generally id.*)  The Licensing Agreement prohibits Studio Physique from creating or using knock-off Megaformers.  (*Id.* § 2.D.)  The Licensing Agreement provides that any such creation or use "shall be considered an immediate

---

[2] To clarify, "Lagree Method" is the exercise, but "LAGREE METHOD" is the trademark.

[3] To the extent the Court relies on objected-to evidence in this order, the parties' objections to such evidence have been thoroughly considered and are overruled.

and material breach of the Agreement," which then gives Lagree the option to seek "immediate injunctive relief in connection with such breach." (*Id.*)

The Licensing Agreement has two termination clauses. Section 1.D provides that Lagree "may terminate the License by a thirty (30) day written notice." Section 4 further reiterates this requirement and adds a curing provision:

> No failure by either party hereto to perform any of its obligations hereunder shall be deemed a material breach of this [Licensing] Agreement until the other party gives such non-performing party written notice of its failure to perform and such failure has not been corrected within 30 days from and after the service of such notice.

**C.    Lagree and Studio Physique's Relationship**

Over the span of its ten-year relationship with Studio Physique, Lagree was largely absent from Studio Physique's operations. (Field Decl. ¶ 22.) Lagree did not conduct any audits or regular inspections of Studio Physique's equipment or premises. (*Id.* ¶ 23.) Lagree also did not require Studio Physique to submit routine equipment maintenance reports. (*Id.*) Further, Lagree did not inspect or manage Studio Physique's marketing materials, including social media posts and branding. (*Id.* ¶ 24.) Since February 2015, Lagree personnel visited Studio Physique's premises on four occasions: three for a trainer certification program, and once for Studio Physique's grand opening. (*Id.* ¶ 26.)

As Studio Physique continued to operate, it began experiencing problems with its Megaformers and availability of replacement parts. (Field Decl. ¶ 27.) Studio Physique repeatedly contacted Lagree to repair, refurbish, and replace the Megaformers through emails and phone calls with Lagree-associated contacts.[4] (*Id.* ¶¶ 29, 32.) Despite these attempts, Studio Physique struggled to maintain adequate supply and availability of Megaformer parts. (*Id.* ¶ 29.)

---

[4] Lagree claims that Studio Physique sent only one request for replacement equipment and one request to replace at least one Megaformer. (Lagree Decl. ¶¶ 20–21.)

In July 2025, Studio Physique purchased reformer-style machines and replacement parts from an online seller unaffiliated with Lagree to avoid endangering customers and closing the studio for an indeterminate period. (*Id.* ¶ 38.) These machines cost Studio Physique $2,000 each, rather than the $23,000 price of Lagree's Megaformer. (*Id.* ¶ 39.) Studio Physique did not receive any reports of injury or complaints about the functionality of the reformer-style machines. (*Id.* ¶¶ 39–41.)

In August 2025, Lagree learned that Studio Physique was using new knock-off Megaformers. (*Id.* ¶¶ 42–44.) On September 11, 2025, Lagree's CEO visited Studio Physique unannounced. (*Id.* ¶¶ 42, 50.) According to Field's declaration and surveillance footage, Lagree's CEO spent a total of two minutes and seventeen seconds in Studio Physique. (*Id.* ¶ 43.) During this time, he touched and photographed two machines, but he did not exercise, observe a class, or otherwise evaluate the machines. (Decl. Aubrey Wollet ISO Opp'n ("Wollet Decl.") ¶¶ 4–9, Dkt. No. 27-3.)

On October 1, 2025, Lagree sent a termination letter to Studio Physique. (Decl. Craig J. Englander ISO Mot. ("Englander Decl.") ¶¶ 3–8, Dkt. No. 23-1.) In the letter, Lagree indicated that Studio Physique had breached the Licensing Agreement by using "counterfeit Megaformers." (*Id.* ¶ 4.) Lagree stated that it had terminated the Licensing Agreement and demanded that Studio Physique stop using the Marks. (*Id.* ¶ 6.)

**D.     Procedural Background**

On October 1, 2025, the same day Lagree sent its termination letter to Studio Physique, Lagree sued Studio Physique in state court for violation of trademark rights under the Lanham Act, breach of contract, and unlawful business practices or acts. (Notice Removal ("NOR") Ex. 4 ("Compl."), Dkt. No. 1-4.) On November 12, 2025, Lagree removed the action to this Court. (NOR, Dkt. No. 1.) On March 16, 2026, Lagree moved for this preliminary injunction. (Mot.)

4

## III.    LEGAL STANDARD

A court may grant preliminary injunctive relief to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  To obtain this relief, the plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm if the preliminary relief is not granted; (3) that the balance of equities tips in his favor; and (4) that the injunction is in the public interest (the "*Winter* factors").  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  The burden of demonstrating the need for a preliminary injunction rests with the moving party.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  The moving party must meet this burden with a "clear showing" that the preliminary injunction is warranted.  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003).

## IV.    DISCUSSION

The Court finds that Lagree is not entitled to a preliminary injunction because it has not demonstrated that it is likely to succeed on the merits.

### A.    Likelihood of Success on the Merits

The Court finds that Lagree has not established likelihood of success on the merits of its trademark infringement claim.  To claim trademark infringement, a plaintiff must show that: (1) it has a valid and protectable trademark, and (2) the defendant's use of the mark is likely to cause consumer confusion.  *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

Lagree argues that it terminated the Licensing Agreement in its October 1, 2025, termination letter, and therefore, Studio Physique's continued use of Lagree's valid Marks is likely to cause consumer confusion.  (Mot. 20–22.)  Studio Physique argues that Lagree abandoned its trademark rights by engaging in naked licensing.  (Opp'n 13–16, Dkt. No. 27.)  Studio Physique also argues that Lagree did not

5

effectively terminate the Licensing Agreement in its October 1, 2025 letter because Lagree failed to adhere to the Licensing Agreement's notice-and-cure clause.  (*Id.* at 12–13.)

The Court finds that Studio Physique has demonstrated Lagree likely forfeited its right to enforce the Marks because Lagree likely engaged in naked licensing.  The Court also finds that Lagree likely did not effectively terminate the Licensing Agreement, such that Studio Physique's continued use of the Marks is authorized and not confusing.

### 1.    *Valid and Protectable Trademark—Naked Licensing*

The Court finds that Lagree has not demonstrated that it likely has a valid and protectable trademark to enforce against Studio Physique because it likely abandoned its trademark rights through naked licensing.  The parties do not dispute that Lagree validly registered the Marks.  (Mot. 19–20; Opp'n 11–13.)  However, Studio Physique contends that Lagree abandoned its rights to enforce the Marks against it by engaging in naked licensing.  (Opp'n 13–16.)

Naked licensing occurs when "the licensor fails to exercise adequate quality control over the licensee."  *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 596 (9th Cir. 2002).  Naked licensing is "inherently deceptive and constitutes abandonment of any rights to the trademark by the licensor."  *Id.* at 598 (citation modified).  As the abandonment is involuntary, courts do not require a showing of subjective intent to find naked licensing.  *Id.* at 596.

While the "requisite degree of control varies by situation," courts analyze three areas of control "to decide whether a licensor exercises adequate control over its marks": (1) "whether the license contained an express contractual right on the part of the licensor to inspect and supervise the licensee's operations"; (2) "whether the licensor exercised actual control of the licensee's operations"; and (3) "whether the licensor reasonably relied on the licensee to maintain quality control."  *F19 Franchising, LLC v. Endo Fitness LL, LLC*, No. 2:23-cv-00185-MEMF (JCx),

6

2023 WL 11950376, at *6 (C.D. Cal. July 28, 2023) (citing *Barcamerica*, 289 F.3d at 596–97). "[T]he proponent of a naked license theory faces a stringent standard of proof." *Barcamerica*, 289 F.3d at 596 (citation modified).

a.    <u>Express Contractual Rights</u>

The Court finds that the Licensing Agreement does not provide Lagree with an express right to supervise Studio Physique's operations in a meaningful way, which suggests Lagree lacked control over the Marks.

When considering this potential avenue, courts look at whether licensors have retained contractual rights to "control[] or supervise[] the most critical aspects of building goodwill and value" in their trademarks. *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006). For example, when the trademark's use is in connection with restaurant services, courts consider whether the licensing agreement included "any provision for routine inspections, adoption of any particular design, or even an operating manual for the conduct of the restaurant['s] business." *Id.* at 1131–32. The absence of express contractual rights to monitor or restrict the quality of goods or services produced under a trademark suggests naked licensing. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010).

Here, the most critical aspect of building customer goodwill and value in the Marks is the quality of the Megaformers and the Lagree brand. (*See* Licensing Agreement § 2.E (acknowledging the importance and great value of the goodwill in the Marks and Megaformers).) However, the Licensing Agreement does not confer Lagree with either the right to routinely inspect the Megaformers or recourse for Studio Physique's failure to maintain the Megaformers. (*See generally id.*) The Licensing Agreement also does not provide Lagree with any operating standards in the form of a manual or a similar document. (*See generally id*.) Indeed, other than a rote mention of "uphold[ing] [Lagree's] good name," (*id.* § 2.E), the Licensing Agreement provides no standard with which to measure performance. Consequently, the

Licensing Agreement does not provide Lagree with any recourse should Studio Physique's quality of instruction or use of the Megaformers become substandard and impact Lagree's brand. Thus, Lagree did not retain any ability to "control[] or supervise[] the most critical aspects of building goodwill and value" in its trademarks. *See Bazaar Del Mundo*, 448 F.3d at 1132 (finding that an agreement that provided "no recourse to the [licensor] if the quality of" the licensee's services "were to deteriorate" did not show sufficient quality control).

Accordingly, the Court finds that Lagree does not possess a meaningful express contractual right of quality control over the Marks, which supports naked licensing.

> b.    Actual Control

The Court finds that Studio Physique has demonstrated that Lagree likely failed to exercise adequate actual control of the Marks, further suggesting Lagree lacked the requisite control over the Marks.

Without actual control, the trademark no longer functions as "a symbol of quality and a controlled source." *FreecycleSunnyvale*, 626 F.3d at 516. A party may demonstrate actual control through declarations detailing inspections, and their circumstances, conducted over a period of several years. *See F19 Franchising, LLC*, 2023 WL 11950376, at *7 (finding declarations of inspections over a five-year period sufficient to show actual control); *but see Barcamerica*, 289 F.3d at 597 (refusing to find actual control where the licensor failed to detail the circumstances of its inspections). However, merely identifying multiple random inspections over a multi-year period is insufficient to suggest actual control. *See Barcamerica*, 289 F.3d at 596–97 (affirming trial court's finding of lack of actual control where a licensor could only point to "random" inspections and reliance on the licensee's reputation).

Here, the Court finds that Lagree likely failed to exercise actual control over the Marks. Since Studio Physique opened in 2015, Lagree did not conduct any routine inspections, enforce a written quality-standards manual, evaluate any Megaformers, or require pre-authorization for advertisements or social media posts. (Field Decl.

8

¶¶ 22–26.)  Although Lagree visited Studio Physique once for a grand opening party and three separate times for an optional trainer-certification program, none of these visits were required by the Licensing Agreement or related to the inspection of the Megaformers or any other compliance control regime.  (*Id.* ¶ 26.)  Indeed, in Lagree's more than ten-year relationship with Studio Physique, Lagree inspected Studio Physique's Megaformers only once, on September 11, 2025, for a total of two minutes and seventeen seconds.  (*Id.* ¶¶ 42–43.)  As the Megaformers are specialized equipment, and Lagree claims that knock-off equipment can malfunction, (Lagree Decl. ¶¶ 4, 17), it is unreasonable that Lagree inspected Studio Physique's Megaformers only once in ten years for genuine parts and quality control, *see Edwin K. Williams & Co. v. Edwin K. Williams & Co.-E.*, 542 F.2d 1053, 1159–60 (9th Cir. 1976) (discussing that a licensor licensing a potentially dangerous product must exert a higher level of quality control).

As Lagree conducted only one actual inspection over a ten-year period, the Court finds that Studio Physique has demonstrated that Lagree likely did not exercise adequate control, supporting naked licensing.

### c.  Reasonable Reliance

The Court finds that Lagree likely cannot establish reasonable reliance on Studio Physique to perform quality control, which suggests that Lagree lacked any control over the Marks.

Where a licensor does not have or exercise actual control, a licensor may still demonstrate adequate control over the trademark where it is familiar with and relies upon the licensee's ability and integrity.  *FreecycleSunnyvale*, 626 F.3d at 518 (examining the licensor's familiarity and reliance on the licensee's quality controls); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017–18 (9th Cir. 1985) (evaluating a licensing relationship by examining the licensor's confidence in the licensee's ability and integrity).  For example, courts have found reasonable reliance on the licensee where the licensor was "engaged in a close working

relationship" with the licensees prior to entering into a licensing agreement. *Arner v. Sharper Image Corp.*, No. 2:94-cv-1713-ABC (BQRx), 1995 WL 873730, at *5 (C.D. Cal. Oct. 5, 1995) (finding reasonable reliance based on a relationship that was "more than merely arms-length"). Conversely, "conclusory statements as to the existence of quality controls" are insufficient to demonstrate reasonable reliance. *Barcamerica*, 289 F.3d at 596–97 (finding lack of reasonable reliance where a licensor could only point to conclusory statements and reliance on the reputation of licensee's deceased employee).

Here, the Court finds that, to the extent Lagree relied on Studio Physique to perform quality control, such reliance was likely unreasonable. Although Lagree and Studio Physique present conflicting evidence on the extent of communications between them, under no circumstance do the facts demonstrate that Lagree was "familiar with" Studio Physique's efforts to control quality.[5] First, Lagree provides no evidence from which the Court could conclude that it was reasonable for Lagree to surrender its quality control to Studio Physique at the outset of their relationship. Instead, the record demonstrates that Lagree agreed to license its Marks and Megaformers to Field, who had zero experience in running a fitness studio prior to opening Studio Physique. (Field Decl. ¶ 3.) Moreover, there is no evidence that Lagree made any attempt to learn whether it could trust its quality control to Field or Studio Physique prior to entering the Licensing Agreement. (*See generally* Lagree Decl; Field Decl.)

Second, although each party presents substantively different facts, neither provides facts showing that Lagree attempted to familiarize itself with Studio Physique's quality control methods even after entering the Licensing Agreement.

---

[5] Moreover, as the parties disagree over some of the fundamental facts underlying this case, a preliminary injunction should not issue. *See Riverside All of Us or None v. City of Riverside*, No. 5:23-cv-01536-SPG (SPx), 2023 WL 7751774, at *3 (C.D. Cal. Nov. 14, 2023) (collecting cases where courts denied requests for preliminary injunctions "where the parties fundamentally disagree on the facts underlying the case").

According to Lagree itself, Lagree communicated with Studio Physique very infrequently: in its entire relationship with Lagree, Lagree claims that Studio Physique reportedly exchanged emails with Lagree only twice about the quality of the Megaformers. (Lagree Decl. ¶¶ 20–21.) According to Studio Physique, it attempted to communicate with Lagree more frequently, but Lagree failed to adequately respond to Studio Physique's multiple requests for help with its equipment. (*See, e.g.*, Field Decl. ¶ 32.) Regardless of which account is to be believed, neither version shows that Lagree had the requisite familiarity with Studio Physique's quality control methods to suggest Lagree could reasonably rely on Studio Physique to control the quality of the trademark. As Lagree was unfamiliar with Studio Physique's quality control operations, Lagree's purported reliance on Studio Physique to establish quality control over the Marks—especially in light of Lagree's lack of actual control—is likely unreasonable.

In conclusion, the Court finds that Studio Physique has shown that Lagree likely lacked meaningful express contractual rights of quality control, did not exercise actual quality control, and unreasonably relied on Studio Physique's quality control measures. Consequently, the Court also finds that Studio Physique demonstrates that Lagree likely engaged in naked licensing and forfeited its ability to enforce its trademark rights in the Marks against Studio Physique. Therefore, Lagree cannot demonstrate a likelihood of success on the issue of whether it has a valid and protectable trademark to enforce in this action.

> ### 2.    *Likelihood of Confusion—Authorized Use*

As Lagree fails to demonstrate likelihood of success on the merits of the first element of its trademark claim, Lagree's Motion fails. *See Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 11323, 1143 (C.D. Cal. 2007) ("Because the court concludes that plaintiff has failed to demonstrate that it owns a [valid] trademark, it need not address whether plaintiff has demonstrated a likelihood of

confusion."). However, the Court shall also address the consumer confusion element as a separate ground for denying the Motion.

Lagree argues that Studio Physique's use of the Marks is likely to lead to confusion because Lagree terminated the Licensing Agreement, making Studio Physique's continued use of the Marks unauthorized. (Mot. 20–22.) However, the Court finds that Studio Physique has demonstrated Lagree likely never properly terminated the Licensing Agreement, meaning that Studio Physique's continued use of the Marks is authorized and does not lead to a likelihood of confusion.

When a licensing relationship exists, the court presumes that the trademarks used by the licensor and licensee are identical by virtue of the licensing agreement, and as a result, no likelihood of consumer confusion exists. *Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008). However, when a licensee continues to use a licensor's trademark after termination of a licensing agreement, "courts have found that the continued use alone establishes a likelihood of consumer confusion." *Sun Microsystems v. Microsoft Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998) (collecting cases). Thus, in a dispute between a licensor and a licensee regarding a licensee's continued use of the licensor's trademark, the core issue is whether the licensor properly terminated the licensing agreement. *Jones II*, 537 F. Supp. 2d at 1065 (finding that a licensee's continued use of a trademark is authorized when a licensor failed to properly terminate a licensing agreement).

The parties disagree as to whether the Licensing Agreement was properly terminated. (Mot. 20–22; Opp'n 12–13.) When a licensing agreement has a termination clause, "the clause controls[,] and a party to the contract may only terminate in accordance with the terms specified." *Powertech Tech. v. Tessera, Inc.*, No. C 11-6121 CW, 2014 WL 171830, at *4 (N.D. Cal. Jan. 15, 2014) (citing *Kuffel v. Seaside Oil Co.*, 11 Cal. App. 3d 354, 368 (1970)).

Here, the Licensing Agreement unequivocally requires Lagree to provide notice and an opportunity to cure prior to terminating the Licensing Agreement. (Licensing

12

Agreement §§ 1.2, 4.)  The Licensing Agreement provides that "in the event . . . [of a] breach of [the Licensing Agreement]," Lagree may only "terminate the License by a thirty (30) day written notice."  (*Id.* § 1.D.)   The Licensing Agreement further reiterates this requirement in section 4, providing that,

> No failure by either party hereto to perform any of its obligations hereunder shall be deemed a material breach of this [Licensing] Agreement until the other party gives such non-performing party written notice of its failure to perform[,] and such failure has not been corrected within 30 days from and after the service of such notice.

Read plainly, the Licensing Agreement contemplates that, if Studio Physique purportedly does not perform under the Licensing Agreement, Lagree must first provide a notice of non-performance and a thirty-day period to cure.  (*Id.*)  If thirty days pass, and Studio Physique still does not perform, Lagree may then terminate the Licensing Agreement.  (*Id.*)

However, instead of sending a thirty-day notice to cure, Lagree sent Studio Physique a notice of immediate termination.  (Englander Decl. ¶ 8.)  As Lagree failed to give a pre-termination notice and afford Studio Physique the opportunity to cure the alleged breach, the Licensing Agreement is likely still active because it has not been properly terminated.  *See Mad River Lumber Sales, Inc. v. Willburn*, 205 Cal. App. 2d 321, 325 (1962) (refusing to declare a contract terminated until the defendant honored a fifteen-day termination clause).  Thus, Studio Physique's continued use of the Marks is likely still authorized and its continued use of the Marks cannot support the finding of likelihood of confusion.  *Jones II*, 537 F. Supp. 2d at 1065.

Lagree seeks to excuse its lack of pre-termination notice by arguing that it can seek "immediate injunctive relief" for Studio Physique's use of derivative works.  (Mot. 20–22 (quoting Licensing Agreement § 2.D).)  "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party."  *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006).  Here, the language of the Licensing

Agreement is not "reasonably susceptible" to Lagree's interpretation because Lagree's interpretation would render the Licensing Agreement's thirty-day notice to cure clause superfluous. *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013) ("[W]hen interpreting a contract, [courts] strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable."). Specifically, if the Court reads the "immediate injunctive relief" clause to mean that the Licensing Agreement could also be *terminated* immediately, its two termination clauses would serve little purpose. *See C&C Props. v. Shell Pipeline Co.*, No. 1:14-CV-01889-DAD-JLT, 2018 WL 3014075, at *5 (E.D. Cal. June 14, 2018) (finding that "there would be no use for a termination clause in an agreement that terminates automatically").

On the other hand, Studio Physique's interpretation is more natural and aligns with the Licensing Agreement's plain language. Under Studio Physique's interpretation, the Licensing Agreement allows Lagree to seek immediate injunctive relief *only* if Studio Physique used derivative works. However, it does not allow Lagree to seek, as it does here, immediate injunctive relief for unauthorized use of the Marks without first properly terminating the agreement. (*See* Mot. 29 (requesting a preliminary injunction prohibiting Studio Physique "from any further use of the" Marks, rather than from continued use of derivative works).) To do so, Lagree must have first properly terminated the Licensing Agreement. This reading gives effect to both the immediate injunctive clause and the two termination clauses without one negating the other.

On the current record, the Court finds that Lagree likely failed to give Studio Physique the requisite notice, and that consequently, the Licensing Agreement is likely still in effect. Therefore, Lagree also fails to demonstrate a likelihood of success on the issue of whether there is a likelihood of consumer confusion.

**B.**     **Remaining *Winter* Factors**

As the Court finds that Lagree fails to demonstrate a likelihood of success on the merits, the Court need not consider the remaining *Winter* factors.  *See Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 982 (9th Cir. 2010) (declining to consider the remaining *Winter* factors after finding that plaintiff was unlikely to prevail on the merits).

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Preliminary Injunction.  (Dkt. No. 23.)


**IT IS SO ORDERED.**


April 24, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

15